UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DAVID CLARY, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-191 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On March 29, 2016, Plaintiff David Clary filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying his application for social security disability benefits [DE 1]. The matter is fully briefed and ripe for decision [DE 16; DE 19; DE 20]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

**I. FACTS**

Clary filed an application for disability insurance benefits on February 5, 2013, alleging an onset date of January 21, 2013. Clary filed his application immediately after being hospitalized for two weeks where he was placed on a mechanical ventilator and received an endotracheal intubation. Upon discharge, it was noted that he had the following diagnoses: pneumonia, sepsis (resolved), adjuvant pneumothorax, possible chronic obstructive pulmonary disease ("COPD"), and hepatitis (resolved). R. at 788. He continued to receive at-home health care because he required assistance with activities of daily living. He could not be left alone because he suffered from confusion, weakness, and forgetfulness, and he was a fall risk. R. at 442, 449-510. He was again hospitalized for four days in late February 2013 because of fever,

dyspnea, weakness, and gastroenteritis marked by low concentrations of potassium and sodium. R. at 235-78.

After his initial hospitalization in 2013, Clary continued to suffer from respiratory problems. A series of pulmonary function tests were conducted throughout Clary's course of treatment, including on March 15, 2013 (R. at 409, 417), June 5, 2013 (R. at 533), October 2013 (R. at 840-49), and June 20, 2014 (R. at 834-38). Clary's treating specialist, Dr. Ndukwu, who is board certified in pulmonary disease, indicated in March 2013 that the test revealed Clary had "severe COPD" dominated by emphysema features. R. at 407, 417.

After suffering from COPD exacerbation in July 2013 (R. at 602), a CT scan performed later that month revealed moderate emphysematous changes. R. at 628. On August 6, 2013, a timed pulmonary walking test was conducted and it was observed that Clary had "some dyspnea" during the test and "increased work of breathing [during] the entire test procedure." R. at 704.

Dr. Lykens, who is board certified in internal medicine and pulmonary disease, was Clary's treating physician from 2013 through late 2014. Dr. Lykens opined that the October 2013 pulmonary function test and CT scan revealed evidence of COPD with severe emphysema. R. at 848-50. In June 2014, Dr. Lykens reported that the updated pulmonary function test showed some slight improvement and he diagnosed Clary with chronic COPD. R. at 826-38. Dr. Lykens advised Clary to use his inhalers regularly for his "severe obstructive lung disease." After physically examining Clary, Dr. Lykens opined that Clary would not be able to stand/walk 6-8 hours per day and could not lift anything over ten pounds, which would result in Clary's being limited to sedentary work.

Clary also began reporting lower back pain in late 2013 to his treating orthopedic surgeon, Dr. Fielder. R. at 925. MRI's performed on Clary's lumbar spine went from "essentially

normal" in early 2013 (R. at 637), to revealing facet arthropathy of the lower lumbar spine in June 2014. R. at 937.

In November 2013, Dr. Fielder diagnosed Clary with trochanteric bursitis. R. at 925. In February 2014, Dr. Fielder referred Clary for physical therapy with a diagnosis of sciatica (or pain that radiated from Clary's lumbar spine to the back of his left leg). R. at 858-80. However, in late March, Clary lost his insurance and had to discontinue physical therapy. Clary's discharge summary indicated that despite some improvement, he continued to have reduced strength in his left hip, knee, and ankle, reduced range of motion in his spine, and a positive straight leg raising test. He could only walk one thousand feet with difficulty and while using a cane. In May 2014, Clary continued to present with a positive straight leg test (R. at 887-93). By August 2014, the symptoms caused by Clary's facet arthropathy had not improved despite his use of a prescribed TENS unit. R. at 930-35.

With respect to state agent opinions, on June 4, 2013, state agent consultative examiner, Dr. Pithadia, noted that Clary became short of breath with only minimal activity. R. at 523-26. Clary also had a reduced range of motion in his lumbar spine and a positive straight leg test. Dr. Pithadia opined that Clary would become short of breath with any activity that required lifting and carrying more than five pounds, which essentially limited Clary to performing less than sedentary work.

After reviewing Dr. Pithadia's findings and Clary's other medical records, in June and August 2013, state agency consultants opined that Clary could actually perform light work (which included the ability to occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds), with some specified postural and environmental limitations. R. at 78-86, 88-98.

Clary's application was denied initially on June 18, 2013, and was then denied on reconsideration on August 19, 2013. On October 16, 2014, a hearing was held before Administrative Law Judge Kimberly Cromer ("ALJ"). During the hearing, testimony was received from Dr. Bernard Stevens (an impartial medical expert) ("ME"), the claimant, and Mr. James Breen (a vocational expert) ("VE").

The ME, who specialized in internal medicine for thirty years and had reviewed Clary's medical file, testified that although Clary complains of low back pain, the MRI's of Clary's lumbar spine from February 2013 and of his hip from November 2013 were normal. The ME did not believe that there was any diagnostic evidence to support Clary's diagnosis of lumbar radiculopathy.[1] The ME also did not believe that Clary was unable to regularly lift five or ten pounds, because it was his opinion that Clary had "no musculoskeletal impairments" and such a limitation was just "unsupported." The ME characterized Clary as having "mild COPD" and essentially normal pulmonary function studies. The ME opined, without the benefit of first hearing Clary testify, that Clary was capable of performing work at the light exertional level.

Clary then provided testimony concerning the nature of his limitations. He indicated that his breathing problems become worse when he tries to do too much, such as by playing with his sons. After getting winded, Clary stated that he needs about fifteen to twenty minutes to recover. Clary continues to seek treatment from Dr. Lykens on a bi-monthly basis, uses regular inhalers four times per day, and uses a rescue inhaler three to five times per week. As to Clary's back pain which radiates to his left hip, the problem started around November 2013. Clary testified that he takes Naproxen and uses a pain cream four times a day, but the pain is still present and he doesn't sleep well at night. On some days the pain is bad enough that he must use a cane, which

---

[1] At the time, the results from Clary's most recent MRI of his lumbar spine were not available.

his physical therapist recommended in early 2014. When using his cane, Clary can only lift a couple of pounds in his non-dominant hand. Ultimately, because of his back issues and shortness of breath, Clary cannot vacuum and he must take several breaks when doing household chores, like cleaning dishes or folding towels. On good days, which occur approximately two days per week, Clary indicated that he can walk to the mailbox, but on bad days, he cannot.

The VE testified that based strictly on the (relevant) hypothetical posed to him (which offered an assigned residual functional capacity ("RFC")[2] of light work, limited by no climbing of ladders, ropes, and scaffolds, no work at unprotected heights or around hazardous machinery, only occasional balancing, kneeling, stooping, crawling, crouching or using the left leg for operation of foot controls, and avoiding concentrated exposure to extreme temperatures, humidity, and air pollutants), Clary would be able to perform his past work (as generally performed) in quality control, and he could also perform other work in the economy, such as work as a hand packager, cashier, or mail clerk. The VE confirmed that, generally speaking, a person cannot maintain competitive work if he would be off-task more than fifteen percent of the workday or if he needed unscheduled work breaks.

The ALJ issued a decision on December 15, 2014, denying Clary disability benefits and concluding that Clary was not disabled under the Social Security Act because he was able to perform his past work and other work in the national economy (steps 4 and 5). The Appeals Council then denied Clary's request for review on March 1, 2016, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

---

[2] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

Clary seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III.  DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in

steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Clary appeals the ALJ's failure to properly weigh the medical opinions. He also contends that the ALJ discredited Clary's complaints without relying on substantial evidence. The Court need not address the second issue with much detail, since remand is required on the first issue.

That is, the Court agrees that the ALJ wholly failed to explain the weight assigned to the opinions of treating doctors. While it is clear that the ALJ relied only on the ME's opinion in crafting the RFC, and thus, the ALJ must have given the ME's opinion more weight than the opinions of treating doctors, the ALJ failed to adequately explain her reasons for doing so. This lack of analysis concerning the medical evidence resulted in an insufficiently supported RFC. Moreover, reliance on the ME's opinion alone in formulating the RFC does not fill the analytical void, because the ME's explanations for his opinion are also inadequate. Ultimately, until substantial evidence supports the RFC determination, there is no way for this Court to affirm the finding that Clary is capable of performing work.

## IV.  ANALYSIS

### A. Medical Opinions & RFC

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See generally* 20 C.F.R. § 404.1527(d). The opinion of the first type, a "treating physician," is

8

ordinarily afforded special deference in disability proceedings.[3] The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

The treating physician's opinion is *not* entitled to controlling weight, however, where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates her reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions . . . this includes giving controlling weight to medical opinions from treating sources . . . [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion, including from an individual's own healthcare providers."). As Clary's application was filed before March 27, 2017, the treating physician rule applies. *See id*. § 404.1527. But the Court would note that even under the new regulations the ALJ must explain how she considered the medical opinions using various enumerated factors. *See id*. § 404.1520c(a)-(c). As explained in this Order, that didn't happen here.

If the ALJ decides the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(1)-(5) and include: 1) the "length of the treatment relationship and the frequency of examination;" 2) the "[n]ature and extent of the treatment relationship;" 3) "[s]upportability;" 4) consistency "with the record as a whole;" and 5) whether the treating physician was a specialist in the relevant area.

In this case, the ALJ did not identify how much weight she assigned to *any* of the opinions of Clary's treating doctors. This was error. 20 C.F.R. § 404.1527 ("[r]egardless of its source, we will evaluate every medical opinion we receive."). However, the Court is able to infer that the treating physician opinions were certainly not given controlling weight, since the ME and consultative state agents were the only doctors who opined that Clary could perform light work (as opposed to sedentary work), consistent with the ALJ's ultimate RFC determination.[4] However, the ALJ never adequately explained why the non-examining ME's characterization of Clary's breathing problems as "mild," trumped opinions by Drs. Ndukwu and Lykens, both treating doctors and pulmonary disease specialists, who longitudinally characterized Clary's respiratory problems as "severe." Moreover, the ALJ's declining to accept Dr. Lykens' opinion that Clary could only perform sedentary work, based on a single treatment note documenting Clary's condition as "fairly stable" and the contention that "the evidence as a whole, is suggestive of a capability for . . . light work," hardly suffices as sufficient explanation. *See* 20 C.F.R. § 404.1527(c)(1)-(5). While the ALJ was not required to give Drs. Ndukwu and Lykens'

---

[4] The ALJ even afforded "[l]ess weight" to the opinions of the state agents by summarily concluding that subsequent evidence supported the ALJ's (and the ME's) ultimate RFC determination.

opinions controlling weight, she was required to provide a sound explanation for her decision to reject them and instead to adopt the ME's view. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

Similarly, the ALJ's opinion as to Dr. Fielder's findings is void of sufficient analysis. The ALJ acknowledged Clary's treatment relationship with Dr. Fielder and noted Dr. Fielder's impression that Clary's recent MRI evidenced facet arthropathy of the lumbar spine. However, the ALJ did not explain how much weight she gave to Dr. Fielder's assessment. It appears that the ALJ was not inclined to give controlling weight to Dr. Fielder's opinion that Clary suffered from lumbar radiculopathy; rather, the ALJ seemingly accepted the ME's view that no diagnostic evidence supported such a diagnosis. But the ALJ failed to provide any explanation, let alone a good explanation, for her determination. *See Scott*, 647 F.3d at 739. Instead, the ALJ has put this Court in the position of providing a treating physician analysis, which is not the Court's role in a substantial-evidence determination. *Lopez*, 336 F.3d at 539. Ultimately, the ALJ's opinion requires remand because the ALJ did not adequately explain how she was guided by the factors in 20 C.F.R. § 404.1527(c)(1)-(5), as "required by regulation[.]" *Scrogham*, 765 F.3d at 697. On remand, the ALJ should address these factors in determining what weight to provide the opinions of treating physicians.

The gap in the ALJ's analysis with respect to the treating physicians' opinions and the ALJ's RFC determination, cannot be filled by the ALJ's giving of "great weight" to the ME's testimony in this case. The regulations indicate that because non-examining sources have no examining or treating relationship with the claimant, "the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3).

Here, the ME conducted a file review. He never examined Clary and he did not have the benefit of Clary's testimony in rendering his opinions. During the administrative hearing, the ME opined that Clary was capable of performing light work. But the ME's testimony was premised on his mistaken belief that no MRIs or diagnostic evidence existed to support Clary's complaints of low back pain. In other words, the June 2014 MRI of Clary's lumbar spine revealing facet arthropathy, was not provided for the ME's review. And, it does not appear that the ALJ ever re-contacted Dr. Stevens to determine if his RFC determination would change based on the additional evidence. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.").

There are more problems with the ALJ's uncritical blanket acceptance of the ME's opinion. That is, the ME characterized Clary's COPD as "mild" and classified Clary's pulmonary function tests as "normal." Based on this testimony, the ALJ found the opinion of Dr. Stevens to be "consistent with the record as a whole." But clearly, the opinion of Dr. Stevens was not "consistent" with the opinions of the treating physicians who characterized Clary's respiratory problems as "severe." The ALJ failed to provide any explanation for the inconsistency between Dr. Stevens' opinion and those opinions of the treating pulmonologists. Additionally, the ALJ did not address the fact that the ME's conclusory statement that Clary's lifting restrictions and need for a cane were simply 'not supported,' actually provided no medically-related explanation at all for rejecting those limitations.

As such, there is not substantial evidence in the record to support a finding that Dr. Stevens had properly incorporated all of Plaintiff's limitations in his RFC opinion. Thus, before

the ALJ rested her ultimate RFC determination solely on Dr. Stevens' opinion, she should have re-contacted the doctor to clarify the inconsistencies and to provide sufficient support for his opinion. On remand, the ALJ will have an opportunity to explore the basis of the ME's conclusions and explain the rationale behind the weight she affords the treating physicians' opinions.

Ultimately, the ALJ's errors require remand because the ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," based upon all of the relevant evidence in the record, even as to limitations that are not severe. SSR 96–8p. In addition, the RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence." *Id.* However, the ALJ's opinion in this case fails to provide an adequate discussion of the medical evidence which was relied upon to formulate the ALJ's RFC assessment.

It should also be noted that the ALJ's reliance on Dr. Stevens' testimony served as a basis for discrediting Clary's reported limitations. But the ALJ's failing to accurately consider the relevant medical evidence calls into question the soundness of the ALJ's reasoning for discounting Clary's complaints[5]—which then served as a basis for the ALJ's unsupported RFC finding. Thus, on remand, the ALJ must correct these errors in assessing Clary's credibility and formulating Clary's RFC.

---

[5] Nor may the ALJ discount Clary's testimony based on his lack of treatment for his back problems without explaining whether Clary's loss of insurance and financial means excused the deficit. *Craft*, 539 F.3d at 679; *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding that the ALJ erred in discrediting the claimant based on an absence of objective support for the limitations, where the claimant's lack of insurance prevented her from seeking medical attention).

**B. Steps 4 and 5**

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Clary is capable of performing past work (step 4) and other work (step 5). More accurately stated, in deciding what work Clary was capable of performing, the ALJ relied on the VE's testimony, which in turn, relied on the ALJ's hypothetical question that incorporated the inadequately supported RFC determination.

The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Clary's claimed (and potentially credible) limitations caused by his COPD, emphysema, and back problems.[6]

Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Clary is capable of performing.[7] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because

---

[6] In fact, the VE testified that if Clary had to use a cane to ambulate, then he would be limited to sedentary work.

[7] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Clary's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant himself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

14

a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), steps four and five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05.

The remedy for the shortcomings noted herein is further consideration, not an award of benefits as requested by Clary's counsel.

## V.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  August 29, 2017

                                           /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court